**AFFIRM; and Opinion Filed April 16, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00467-CV

**JAMES DAY, INDIVIDUALLY AND D/B/A GARLAND PUBLIC SHOOTING RANGE, Appellant**
**V.**
**MICHAEL DOMIN, Appellee**

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-11094-M**

## MEMORANDUM OPINION
Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Fillmore

A jury found the negligence of appellant James Day, individually and d/b/a Garland Public Shooting Range, proximately caused injury to appellee Michael Domin and awarded damages. In two issues, Day asserts the evidence is factually insufficient to support the jury's award of damages for future physical impairment and future medical expenses. We affirm the trial court's judgment.

### Background[1]

Domin sued Day, alleging that, while working in the backyard of his residence in Rowlett, Texas, he was struck by an errant bullet fired from the Garland Public Shooting Range.

---

[1] Day does not challenge the sufficiency of the evidence to support a finding of liability. We will dispense with a recitation of facts unnecessary to the resolution of the issues under consideration in this appeal.

A jury found Day's negligence proximately caused Domin's injuries and awarded damages of $250,000 for physical pain and mental anguish sustained in the past; $100,000 for physical pain and mental anguish Domin, in reasonable probability, will sustain in the future; $75,000 for physical impairment in the past; $65,000 for physical impairment Domin, in reasonable probability, will sustain in the future; $112,080.19 for medical care expenses incurred;[2] $200,000 for medical care expenses Domin, in reasonable probability, will incur in the future; $6,000 for lost earning capacity; $50,000 for disfigurement in the past; and $50,000 for disfigurement Domin, in reasonable probability, will sustain in the future.

Day's motion for new trial and motion to modify the trial court's judgment were overruled by operation of law, and he filed this appeal. In two issues, Day contends the evidence is factually insufficient to support the jury's findings of damages for future physical impairment and future medical expenses. Alternatively, Day contends the jury's findings of damages for future physical impairment and future medical expenses are excessive.

**Standard of Review**

When a party without the burden of proof challenges on appeal the factual sufficiency of the evidence to support an adverse jury finding, we consider and weigh all the evidence and set aside the verdict only if the evidence is so weak that the finding is clearly wrong and manifestly unjust. *Long v. Long*, 196 S.W.3d 460, 464 (Tex. App.—Dallas 2006, no pet.); *see also Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). This factual sufficiency standard of review applies specifically to an appellate point of error contending damages awarded by the jury are excessive. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998). In applying this standard, we acknowledge the jury is the sole judge of the credibility of the witnesses and the

---

[2] The parties stipulated medical charges of $112,080.19 were reasonably necessary for diagnosis, care, or treatment of Domin's injuries.

weight to be given their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Therefore, we cannot substitute our judgment for that of the jury. *Id.*

**Future Physical Impairment**

In his first issue, Day contends the evidence is factually insufficient to support the jury's award of damages for the physical impairment that Domin, in reasonable probability, will sustain in the future. In the alternative, Day contends the jury's finding of $65,000 for future physical impairment is excessive. "Matters of past and future physical pain, mental anguish, and physical impairment are particularly within the jury's province." *Marvelli v. Alston*, 100 S.W.3d 460, 482 (Tex. App.—Fort Worth 2003, pet. denied). "Therefore, as long as sufficient probative evidence exists to support the jury's verdict, neither the reviewing court nor the trial court is entitled to substitute its judgment for that of the jury." *Id.*

"When someone suffers personal injuries, the damages fall within two broad categories— economic and non-economic damages." *Golden Eagle Archery*, 116 S.W.3d at 763. Economic damages are traditionally those that compensate an injured party for lost wages, lost earning capacity, and medical expenses, and non-economic damages include compensation for pain, suffering, mental anguish, and disfigurement. *Id.* "Physical impairment, sometimes called loss of enjoyment of life, encompasses the loss of the injured party's former lifestyle." *Dawson v. Briggs*, 107 S.W.3d 739, 752 (Tex. App.—Fort Worth 2003, no pet.); *see also Golden Eagle Archery*, 116 S.W.3d at 772 (when evidence supports submission, loss of enjoyment of life fits best among factors factfinder may consider in assessing damages for physical impairment; if other elements such as pain, suffering, mental anguish, and disfigurement are submitted, there is little left for which to compensate under category of physical impairment other than loss of enjoyment of life). "Physical impairment is an element of damages that extends beyond loss of earning capacity and beyond any pain and suffering, to the extent that it produces a separate loss

that is substantial or extremely disabling." *Dawson*, 107 S.W.3d at 752; *see also Golden Eagle Archery*, 116 S.W.3d at 772 (if definition of physical impairment is provided to a jury, it would be appropriate to advise jury it may consider loss of enjoyment of life as a factor, but jury should be instructed that "the effect of any physical impairment must be substantial and extend beyond any pain, suffering, mental anguish, lost wages or diminished earning capacity and that a claimant should not be compensated more than once for the same elements of loss or injury"); *Allen v. Whisenhunt*, 603 S.W.2d 242, 244 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ dism'd w.o.j.) (to recover damages for future physical impairment, one must have proof of physical impairment extending beyond impediment to earning capacity and pain and suffering and producing a distinctly separate loss that is substantial).

There logically may be some overlap among the physical impairment, pain, suffering, mental anguish, and disfigurement categories of non-economic damages. *See Golden Eagle Archery*, 116 S.W.3d at 770. Here, there was no definition of physical impairment provided in the jury charge. The jury charge, however, included an instruction that the jury was to consider each element of damages separately and was not to include damages for one element in any other element:

> Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. This [sic] is, do not compensate twice for the same loss, if any.

The charge permitted the jury to award separate amounts of damages for past and future pain and mental anguish, physical impairment, and disfigurement. *See id.* at 770–71. In conducting our factual sufficiency review, we presume the jury did not award damages to Domin for any element more than once, unless the record demonstrates otherwise. *See id.* at 771.

Where, as here, the categories of damages submitted to the jury were not defined and "therefore were not cleanly and clearly segregated from one another, the question, then, is how

should the court of appeals review the factual sufficiency of the evidence supporting the jury's award for physical impairment." *Id*. at 770. Since there is a possible overlap among the physical impairment, pain and mental anguish, and disfigurement categories of non-economic damages, the jury could have compensated Domin for future physical impairment in connection with an award for future pain and mental anguish or disfigurement or divided compensation in some manner between the categories, and the jury charge permitted the jury to make its own determination of how to categorize and compensate the non-economic losses suffered by Domin. *See id*. Day did not challenge the factual sufficiency of the evidence to support all potentially overlapping categories of non-economic damages. Therefore, we "consider all the evidence that bears on [the challenged] category" of future physical impairment "even if the evidence also relates to another category of damages." *Id*. at 773.

Domin was forty-eight years of age at the time he was shot. The bullet entered his lower back near his spine. The bullet lacerated Domin's pancreas and diaphragm, and a rib was fractured. Domin underwent emergent exploratory surgery on the day he was shot. Almost a liter of blood was removed from his abdomen as a result of internal bleeding, and his lacerated pancreas was repaired during that surgery. The lengthy surgical incision was closed externally with over forty stitches. A chest tube was placed to address a collapsed lung. Domin was in the hospital for ten days, six days of which were spent in the intensive care unit. He developed pneumonia while on a ventilator to support his breathing. The bullet that remained lodged near the spleen in soft tissue at the level of the thoracic twelfth spinal vertebrae was surgically removed six months after Domin was shot.

Domin has an incisional hernia from the exploratory abdominal surgery. The tissue holding Domin's abdomen intact posterior to his abdominal muscles has failed and the omentum, or fatty covering, inside the abdomen and his small bowel are protruding through the hernia.

Medical expert Benjamin Respass, M.D., testified that repair of the hernia would require surgery, which may entail placement of surgical mesh in Domin's abdomen for stability. Respass testified that Domin's lacerated pancreas predisposes him to hospitalization once to three times a year for treatment of pancreatitis, and Domin would also have to change his diet "tremendously." Respass testified the second complication that could be expected as a result of Domin's lacerated pancreas is development of diabetes mellitus, and the concomitant complications of peripheral vascular disease, neuropathy, heart disease, renal disease, and eyesight deterioration. Domin, a cigarette smoker, is "very likely" to have those complications. Respass testified that even if Domin stopped smoking cigarettes, diabetes remains a known complication of injury to his pancreas.

Domin is married and has five children. At the time of his injury, his daughters were twelve and one-half and eight years of age, respectively, and his triplet sons were two years of age. Domin testified that at the end of his ten-day hospitalization, he just wanted to go home to be with his family. For several weeks, he spent his days and nights sitting and sleeping in a recliner and could not play with his children. In connection with his work as an automobile body repairman, his abdominal incision makes it difficult for him to assume the awkward positions necessary to locate and repair dents, and the strength of his abdominal muscles used in repair of dents is adversely affected by the incision. Domin testified that although the pain has lessened over time, he continues to experience some pain in his upper back, stomach, and areas of scar tissue. Domin's scars from exploratory abdominal surgery, chest tube placement, a pancreatic drain, bullet entry, and removal of the bullet, as well as the bulge of his incisional hernia, were shown to the jury. Domin testified that he does not remove his shirt when he takes his children swimming or to the beach. Domin's physician has advised him not to drink any alcohol, although Domin testified he did not drink previously other than an occasional beer.

The evidence at trial established Domin had multiple continuing medical complications arising from the injuries he sustained as a result of the gunshot. Domin experiences continuing pain from an incisional hernia. Surgical repair of the hernia would necessitate time away from his family during hospitalization and would limit activity with his family during recuperation. Medical treatment for predictable complications from his lacerated pancreas, including pancreatitis and diabetes, would also necessitate time away from his family during hospitalizations and treatments and would limit activity with his family during recuperation. The evidence also established that as a result of Domin's damaged pancreas, it will be necessary for him to change his diet. While Domin did not seek damages for lost earning capacity in the future,[3] evidence of inability to work or difficulty accomplishing work tasks may support an award of future physical impairment damages. *See Demby v. Rivers*, No. 01-08-00965-CV, 2009 WL 4437093, at \*3 (Tex. App.—Houston [1st Dist.] Dec. 3, 2009, no pet.) (mem. op.) (appellee's inability to work after the accident was a part, but not all, of appellee's proof of physical impairment damages). Record evidence indicates that Domin's future job performance as an automobile body repairman will be impacted because it is difficult for him to assume the awkward positions necessary to locate and repair dents, and the strength of his abdominal muscles used in repair of dents is adversely affected.

Considering the applicable standard of review and evidence of record, we conclude the jury's finding of future physical impairment is supported by factually sufficient evidence; the evidence is not so weak that it can be said the jury's finding of future physical impairment is clearly wrong and manifestly unjust. *See Long*, 196 S.W.3d at 464.

In a single sentence in his brief, Day alternatively contends the jury's finding of $65,000 as compensation for future physical impairment is excessive. An appellant's brief must contain a

---

[3] Domin requested and received a damage award for loss of earning capacity in the past.

clear and concise argument, including appropriate citations to authority. TEX. R. APP. P. 38.1(i). Failure to cite legal authority or provide substantive analysis of the legal issue presented results in waiver of the complaint. *Olsen v. Comm'n for Lawyer Discipline*, 347 S.W.3d 876, 884 (Tex. App.—Dallas 2011, pet. denied). Although we question whether Day has adequately presented this complaint on appeal, we nevertheless conclude that the jury's award of $65,000, as compensation for physical impairment Domin, in reasonable probability, will sustain in the future, is not excessive.

In reviewing a challenge that an award for a category of damages is excessive because there is factually insufficient evidence to support it, we "should consider all the evidence that bears on that category of damages, even if the evidence also relates to another category of damages. To do otherwise would mean that evidence that reasonably could have supported the jury's award would not be considered, which would be improper." *Golden Eagle Archery*, 116 S.W.3d at 773. "Matters of pain and suffering, mental anguish, physical impairment, and loss of consortium are necessarily speculative, and it is particularly within the jury's province to resolve these matters and determine the amounts attributable thereto." *Lanier v. E. Founds., Inc.*, 401 S.W.3d 445, 455 (Tex. App.—Dallas 2013, no pet.). "An award of future damages in a personal injury case is always speculative." *Pipgras v. Hart*, 832 S.W.2d 360, 365 (Tex. App.—Fort Worth 1992, writ denied). Considering the applicable standard of review and evidence of record, we conclude that the jury's finding of the amount of damages for future physical impairment— less than the damages the jury found for past physical impairment, which are unchallenged on appeal—is not excessive. The finding of damages for future physical impairment is supported by factually sufficient evidence; the evidence is not so weak that it can be said the jury's finding is clearly wrong and manifestly unjust. *See Long*, 196 S.W.3d at 464.

We resolve Day's first issue against him.

## Future Medical Expenses

In his second issue, Day contends the evidence is factually insufficient to support the jury's award of damages for the medical care expenses that Domin, in reasonable probability, will incur in the future. In the alternative, Day contends the jury's finding of $200,000 for future medical care expenses is excessive.[4]

"To recover future medical expenses, a plaintiff must show there is a 'reasonable probability' that such expenses will be incurred in the future." *Sanmina-SCI Corp. v. Ogburn*, 153 S.W.3d 639, 642 (Tex. App.—Dallas 2004, pet. denied). This includes evidence proving that, in all reasonable probability, future medical care will be required and the reasonable cost of that care. *Id.*; *see also Pustejovsky v. Rapid-Am Corp.*, 35 S.W.3d 643, 652 (Tex. 2000) (noting courts have interpreted reasonable medical "probability" to mean greater than fifty percent chance).

Respess testified regarding the medical care that, in reasonable probability, Domin will require in the future. Respess testified that the tissue holding Domin's abdomen together had failed and the omentum and small bowel were protruding through his incisional hernia. To repair the incisional hernia, a general surgeon would "have to put mesh in [Domin's] stomach to make sure all that gets put back together." With regard to complications Domin could "expect to suffer for the rest of his life" as a result of the lacerated pancreas, Respess testified the two major complications are chronic pancreatitis and diabetes. Domin's "likelihood" of chronic pancreatitis is "much higher" following laceration of his pancreas, and the literature "has lots of information about people developing pancreatitis after pancreatic insult or penetrating wound." Respess testified that "people with penetrating wounds to their pancreas get diabetes, and they get all the complications of diabetes," those being peripheral vascular disease, neuropathy, heart

---

[4] Day does not challenge the admissibility of evidence regarding future medical expenses, as his counsel acknowledged at oral submission.

disease, renal disease, and eyesight deterioration. Domin, a cigarette smoker, is "very likely" to have those complications of diabetes; even if Domin stopped smoking cigarettes, diabetes remains a known complication of injury to his pancreas.

Respess further testified concerning the reasonable cost of the future medical care Domin, in reasonable probability, will require. Respess testified that surgical repair of the incisional hernia would cost $25,000. Domin's "probable" hospitalizations twice a year for pancreatitis would cost $5,000 or $6,000 each. Diabetes, if treatable on an outpatient basis, would "probably" cost $200 or $300 a month. Respass did not testify regarding likely future medical expenses if Domin developed complications associated with diabetes.

At the time of trial, Domin was fifty-two years of age. In closing argument, Domin's counsel "assumed" Domin's life expectancy was twenty years and calculated for the jury the twenty-year cost of future medical treatment given the cost projections provided in the testimony of Respass. The jury found the medical care expenses Domin, in reasonable probability, will incur in the future total $200,000. This total figure is significantly less than a twenty-year projection of costs argued by Domin's counsel for pancreatitis and diabetes alone. For example, the $200,000 award for future medical expenses could be supported solely by multiplying an annual cost of $5,000 for hospitalization twice a year for pancreatitis (the lower end of the Respass range) times a twenty-year life expectancy. The total cost of future medical expenses would be higher if $6,000 per hospitalization twice a year for pancreatitis (the higher end of the Respass range) was used in the calculation. This calculation would not account for the Respass estimates of $25,000 for future medical expenses relating to incisional hernia repair surgery or $200 to $300 per month for outpatient diabetes treatment, which would total $48,000 to $72,000 over a twenty-year period.

"An award of future damages in a personal injury case is always speculative. Life expectancy, medical advances, and the future costs of products, services and money are not matters of certainty, thus appellate courts are particularly reluctant to disturb a jury's award of these damages." *Pipgras*, 832 S.W.2d at 365; *see also Arrington v. Paschall*, 352 S.W.2d 866, 869 (Tex. Civ. App.—Dallas 1961, writ ref'd n.r.e.) ("Matters of future medical expense, future loss of earnings, and future pain and suffering, are necessarily speculative and it was peculiarly within province of the jury to resolve these matters and to set the amount of such damages."). "In determining damages, the jury has discretion to award damages within the range of evidence presented at trial." *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002). "Often a jury must extrapolate an award of future damages from proof of other matters, for example, an award of future medical damages based upon a finding of past medical treatment." *Pipgras*, 832 S.W.2d at 365. With regard to future medical expenses, "[n]o precise evidence is required," and [t]he jury may make its award based upon the nature of the injuries, the medical care rendered before trial, and the condition of the injured party at the time of trial." *City of San Antonio v. Vela*, 762 S.W.2d 314, 321 (Tex. App.—San Antonio 1988, writ denied).

Respess's testimony established there is a reasonable probability that Domin will require future medical care and the reasonable cost of that future care. *See Ogburn*, 153 S.W.3d at 642. Considering the applicable standard of review and evidence of record, we conclude the damages found by the jury for the cost of future medical care is supported by factually sufficient evidence; the evidence is not so weak that it can be said the jury's finding is clearly wrong and manifestly unjust. *See Long*, 196 S.W.3d at 464. Having concluded that the damages found by the jury for the cost of future medical care are supported by factually sufficient evidence, we also conclude the damages are not excessive. *See Ellis*, 971 S.W.2d at 406. Accordingly, we resolve Day's second issue against him.

–11–

## Conclusion

Having resolved Day's issues against him, we affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

140467F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JAMES DAY, INDIVIDUALLY AND
D/B/A GARLAND PUBLIC SHOOTING
RANGE, Appellant

No. 05-14-00467-CV    V.

MICHAEL DOMIN, Appellee

On Appeal from the 298th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. DC-10-11094-M.
Opinion delivered by Justice Fillmore,
Justices Bridges and Brown participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

     It is **ORDERED** that appellee Michael Domin recover his costs of this appeal from appellant James Day, Individually and d/b/a Garland Public Shooting Range.

Judgment entered this 16th day of April, 2015.